IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ALEXANDER, | : | Civil No. 3:22-cv-1195 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| B. MYERS, E. SPECK, D. WISER, | : | |
| S. ELLENBERGER, K. KIFER, | : | |
| J. TAYLOR, C. GREENLEAF, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff John Alexander ("Alexander"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. §

1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 17). Named

as Defendants are corrections lieutenant Myers, corrections lieutenant Speck, corrections

lieutenant Wiser, corrections officer Taylor, corrections officer Greenleaf, hearing examiner

Ellenberger, and inmate accounts supervisor Kifer. Presently before the Court is

Defendants' Rule 12(b) motion (Doc. 21) to dismiss. For the reasons set forth below, the

motion will be granted in part and denied in part.

## I.   Allegations of the Amended Complaint

On June 20, 2019, Alexander was transferred to the State Correctional Institution at

Smithfield ("SCI-Smithfield"). (Doc. 17 ¶ 10). He first alleges that Defendants Myers,

Speck, Greenleaf, and Kifer violated his First Amendment right of access to the courts by

interfering with his *in forma pauperis* documents in another civil case, number 3:19-CV-947. (*Id.* ¶¶ 14-23, 127). Alexander asserts that his other civil case, number 3:19-CV-947, was dismissed on August 15, 2019, based on his failure to file the *in forma pauperis* documents. (*Id.* ¶ 26). He further claims that these alleged actions constituted retaliation under the First Amendment. (*Id.* ¶ 127).

Alexander next alleges that he was exposed to oleoresin capsicum ("OC") spray on February 2, 2020, February 10, 2020, and February 11, 2020, when correctional officers sprayed other inmates in the restricted housing unit ("RHU"). (*Id.* ¶¶ 54-57). He claims that Defendants Wiser, Myers, and Speck "directed or authorized" the use of OC spray against the other inmates. (*Id.* ¶ 57). Alexander filed grievance numbers 848561 and 851096 related to the use of OC spray. (*Id.* ¶ 58). He alleges that Defendant Wiser interviewed him in connection with these grievances, stated that the grievances were frivolous, and asked him to withdraw the grievances. (*Id.* ¶ 59). Alexander refused, and Defendant Wiser allegedly told him it would be "better" if he did not continue filing grievances. (*Id.*).

On June 24, 2020, Defendants Wiser, Greenleaf, and Taylor allegedly searched Alexander's cell and personal property, and left his property "in complete disarray." (*Id.* ¶¶ 69-70). Alexander alleges that Defendants Wiser, Greenleaf, and Taylor confiscated his legal documents, research notes, witness affidavits, photos, institutional papers, address and phone book, and old letters. (*Id.* ¶ 72). Defendant Greenleaf gave him a confiscated items receipt, number B924054. (*Id.* ¶ 73). Alexander claims that the receipt did not list all

of the confiscated items.  (*Id.*).  On June 29, 2020, Alexander filed a grievance about the search and property confiscation.  (*Id.* ¶ 74).  He alleges that Defendant Myers supervised the preparation of the confiscated items receipt and directed Defendant Greenleaf to omit certain items.  (*Id.* ¶ 76).

On July 2, 2020, Alexander attended a misconduct hearing on charges of possession of a controlled substance, possession of contraband, conspiracy, and unauthorized use of the mail and telephone.  (*Id.* ¶¶ 77, 79).  Hearing examiner Szelewski, a non-defendant, presided over the hearing and ultimately dismissed the charges.  (*Id.* ¶ 77).  Alexander claims that Defendant Myers was "irritated and angry" about the dismissal of these charges and stated that the charges would be refiled.  (*Id.* ¶ 78).

On July 2, 2020, Defendant Myers filed inmate misconduct number D450789, charging Alexander with the same violations.  (*Id.* ¶¶ 79-81).  Alexander contends that the charges were based on Defendant Myers' "interpretation of Plaintiff's written and verbal communications," the alleged contraband found at Alexander's sister's residence, and allegations that Alexander conspired with his daughter and others to smuggle drugs through the mail.  (*Id.* ¶79).  A disciplinary hearing was held for misconduct number D450789 and Defendant Ellenberger presided as the hearing examiner.  (*Id*. ¶¶ 83-84).  Alexander refused to plead guilty to the charges.  (*Id.* ¶¶ 85-87).  He alleges that Defendant Ellenberger declined to call witnesses or review the evidence and found him guilty of all misconduct charges.  (*Id.*).  Alexander appealed the guilty finding to all levels of appeals,

3

and the hearing examiner's determination was upheld at every stage. (*Id.* ¶¶ 91-92).

Alexander alleges that he was found guilty of the charges because Defendants Myers,

Speck, and Wiser "manufactured and/or 'interpreted'" evidence to implicate him, and

strategically assigned Defendant Ellenberger as the hearing examiner. (*Id.* ¶¶ 96-102).

In 2020, Defendants Myers and Speck allegedly requested that Alexander be placed

in the DOC's Drug Elimination Management Operation ("DEMO") program. (*Id.* ¶ 108). The

DEMO program confines inmates to segregated housing with limited privileges for at least

one year. (*Id.* ¶ 111). Alexander contends that Defendants Myers and Speck relied on

misconduct number D450789 to support the request for placement into the DEMO program.

(*Id.* ¶¶ 108-110). He further alleges that Defendants initiated this request in retaliation for

Alexander's filing of inmate grievances and civil suits. (*Id.* ¶ 112).

Alexander also alleges that he was restricted from calling his son and daughter. (*Id.*

¶ 93). On July 20, 2020, he sent a request to staff member to Defendant Myers about the

restriction of his daughter's phone number. (*Id.* ¶ 93). In response, on July 22, 2020,

Alexander claims that Defendant Myers "implicitly acknowledged" that his daughter was not

involved in his drug-related misconduct. (*Id.*). He further claims that Defendants Myers,

Speck, and Wiser approved these phone restrictions. (*Id.* ¶ 94). Alexander asserts that

Defendants defamed his daughter because she was not involved with his alleged drug

trafficking into a state correctional facility. (*Id.* ¶¶ 106, 136). On July 27, 2020, Alexander

filed a grievance wherein he complained that Defendants Myers, Speck, and Wiser abused

4

their authority in preventing phone calls with his son and daughter.  (*Id.* ¶ 95).  The grievance was denied.  (*Id.*).

## II.   **Legal Standard**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.  **Discussion**

Defendants move to dismiss the amended complaint on the following grounds: (1) Alexander failed to state any claim upon which relief can be granted; (2) Alexander is not entitled to declaratory and injunctive relief; and (3) all claims are barred by the two-year

statute of limitations. (*See* Doc. 25). The Court will first address the threshold question of whether the applicable statute of limitations bars Alexander from bringing this action. The Court will then proceed to address the merits of Alexander's claims.

### A. Statute of Limitations

Defendants seek to dismiss the amended complaint as barred by the statute of limitations. (Doc. 25, pp. 36-37). They seemingly argue that because the statute of limitations defect is clear on the face of the complaint, i.e., the cause of action accrued in June of 2019, and the complaint was file-stamped on August 5, 2022, it is appropriate to address the issue on a motion to dismiss. (*Id.*).

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; PA. CONS. STAT. ANN. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599.

"Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to

7

a pleading relates back to the date of the original pleading when…the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Alexander's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. The allegations of the amended complaint pertain to incidents that admittedly occurred several years ago. (Doc. 17). Alexander asserts that he arrived at SCI-Smithfield on June 20, 2019, and the events at issue occurred immediately thereafter, and up until July 27, 2020. Based on these allegations, the statute of limitations began running at the latest, on July 27, 2020. Alexander filed his original complaint on July 28, 2022.[1] He filed an amended complaint on November 10, 2022.[2] The amended complaint contains essentially the same claims as the original complaint, and, therefore, relates back to the time the original complaint was filed. *See Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (holding that "the underlying question

---

[1] Although the docket states that the complaint was filed on August 5, 2022, this is the date it was received by the Court. Under the prisoner mailbox rule, the complaint is deemed filed when Alexander handed it to prison officials for mailing, which was on July 28, 2022. *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing.").

[2] The amended complaint was received on December 1, 2022, but dated November 10, 2022. *See Pabon*, 654 F.3d at 391 n.8 (discussing the federal prisoner mailbox rule).

for a Rule 15(c) analysis is whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint" (internal quotations omitted)).  Absent tolling, it appears that Alexander needed to commence this action by July 27, 2022, and that his original complaint was filed one day late on July 28, 2022.

Alexander admits that "some of the predicate events occurred in 2019" and are thus untimely.  (Doc. 27, p. 2).  However, he argues that the Court should toll the statute of limitations: (1) during the time he exhausted his prison administrative remedies; (2) because he was not aware of all the circumstances surrounding his lawsuit until approximately March, 2022 and May, 2022; and (3) because of the continuing violation doctrine.  (Doc. 17 ¶¶ 117-125; Doc. 27, pp. 2-6).

First, under the federal Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, a prisoner is required to exhaust available prison administrative remedies before commencing a lawsuit asserting claims based on his conditions of confinement.  While the prisoner exhausts such administrative remedies, the statute of limitations is tolled.  *Wisniewski*, 857 F.3d at 158.  Although some of the actions that Alexander complains of occurred more than two years prior to the filing of his complaint, the statute of limitations was tolled during the time his exhausted his grievances.  (See Doc. 17 ¶¶ 114-116).  Accordingly, it cannot be determined from the face of the complaint alone whether the statute of limitations bars Alexander's claims and Defendants' motion will be denied in this respect.

9

Next, Alexander argues that, with respect to Counts I and V of the amended complaint, he was not aware of all the facts necessary to bring those claims until March and May of 2022. (Doc. 27, pp. 2-3). The statute of limitations may be subject to equitable tolling where it is shown that the plaintiff exercised reasonable diligence in bringing his claims. *Campbell v. Kelly,* 87 F. App'x 234, 236 (3d Cir. 2003). However, it has been recognized that the limitations period in a § 1983 action will begin to run even if the plaintiff does not know all the facts necessary for his claim, all that is required is that the plaintiff have sufficient notice to place him on alert of the need to begin investigating. *See Gordon v. Lowell,* 95 F.Supp.2d 264, 272 (E.D. Pa. 2000); *see also New Castle Cnty. v. Halliburton NUS Corp.,* 111 F.3d 1116, 1125 (3d Cir. 1997). "[A] claim accrues upon awareness of *actual injury,* not upon awareness that the injury constitutes a *legal wrong.*" *New Castle Cnty.,* 111 F.3d at 1125 (emphases in original). Because Alexander maintains that he was not apprised of the critical facts of Counts I and V until 2022, the Court finds that he has established a basis for tolling of the limitations period.

Lastly, Alexander argues that the Court should excuse his late filing under the continuing violation doctrine. "The continuing violation[ ] doctrine is an equitable exception to the statute of limitations." *Spencer v. Courtier,* 552 F. App'x 121, 123 (3d Cir. 2014). It postpones the running of the statute of limitations "when a defendant's conduct is part of a continuing practice.*" Randall v. City of Philadelphia Law Department*, 919 F.3d 196, 198 (2019) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d

1283, 1295 (3d Cir. 1991)).  "If a defendant's conduct constitutes a continuing practice, the entire claim may be timely if the last act of the practice falls within the statute of limitations." *Spencer*, 552 F. App'x at 123 (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).  Critically, "the continuing-violation[s] doctrine focuses on continuing *acts*, not *effects.*"  *Randall*, 919 F.3d at 199 (emphases in original).  "In other words, the doctrine relies on a *defendant's* continuing acts, not a *plaintiff's* continuing injury." *Id.* (emphasis in original).  In sum, a plaintiff must demonstrate that a defendant committed at least one affirmative act within the statute of limitations, and that that act was part of a continuing practice to violate the plaintiff's rights.  *Id.*; *see also Smith v. Dunn*, No. 20-2404, 2022 WL 1011214, at *2 (3d Cir. Apr. 5, 2022).  In order to establish that a defendant's conduct was part of a continuing practice, a plaintiff must demonstrate that "the defendant's conduct was more than isolated or sporadic acts." *Spencer*, 552 F. App'x at 123.  Applying those principles here, Alexander argues that Defendants' continuing actions occurred during the limitations period or were not immediately discovered.  (Doc. 27, p. 3 n.4).  Based on these allegations, the Court concludes that the continuing violations doctrine saves Alexander's claims.

At this stage, the Court must deny Defendants' motion to dismiss the action as barred by the statute of limitations.

### B. First Amendment Claims

#### 1. Access to Courts

Alexander alleges that Defendants violated his First Amendment right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted). Following *Lewis*, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997). An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

The confiscation or destruction of legal materials by prison officials may constitute a denial of court access. *See Zilich v. Lucht*, 981 F.2d 694, 695-96 (3d Cir. 1992). However,

Alexander has not established that "he lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim due to the actions of defendants." *Blanchard v. Fed. Bureau of Prisons*, 428 F. App'x 128, 130 (3d Cir. 2011) (citing *Monroe*, 536 F.3d at 205-06). Alexander alleges that his prior civil case, number 3:19-CV-947, was dismissed for failure to submit the requisite documents to proceed *in forma pauperis*. Review of the docket for civil action number 3:19-CV-947 reveals that Alexander initiated the action without submitting the *in forma pauperis* documents. *See Alexander v. Cumberland Cnty., et al.*, No. 3:19-CV-947 (M.D. Pa.). Therefore, on June 5, 2019, the Court ordered Alexander to submit the appropriate documents. *Id.*, Doc. 8. On July 8, 2019, Alexander submitted an application to proceed *in forma pauperis*; however, the application was an incorrect form. *Id.*, Doc. 9. The Court then issued a second order directing Alexander to submit the proper financial forms. *Id.*, Doc. 10. Alexander failed to comply with the order, and the case was dismissed without prejudice on August 15, 2019. *Id.*, Doc. 11. On September 26, 2019, Alexander filed an appeal to the United States Court of Appeals for the Third Circuit. *Id.*, Doc. 12. The Third Circuit dismissed the appeal, and, on October 23, 2019, Alexander filed a motion to reopen his action in this Court. *Id.*, Docs. 14, 15. Because Alexander failed to submit the proper financial forms along with his motion, the Court denied the motion to reopen. *Id.*, Doc. 17.

In the instant action, Alexander alleges that Defendants interfered with his ability to submit documents in civil action number 3:19-CV-947. However, the docket for civil action

number 3:19-CV-947 reflects that he properly submitted filings during the time in question.

In any event, Alexander has not described his allegedly lost claims with *any* specificity such

that the Court could plausibly conclude that those claims are nonfrivolous or arguable. *See*

*Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (*per curiam*) (affirming the

dismissal of access to courts claim based on the CERT team's loss of plaintiff's legal

property where plaintiff "did not allege any facts about the merits of his underlying claim"

and did not "demonstrate that the loss of his legal materials, while unfortunate and

inconvenient, has rendered him unable to seek the District Attorney's review"); *Bowens v.*

*Matthews*, 765 F. App'x 640, 643 (3d Cir. 2019) ("To the extent that Bowens described his

PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or

'arguable.'"); *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated

their legal materials" and that "they lost the opportunity to pursue attacks of their convictions

and civil rights claims" without "specify[ing] facts demonstrating that the claims were

nonfrivolous" did not state a claim). A mere hope that he would have been successful is

insufficient to meet the actual injury requirement. *See Monroe*, 536 F.3d at 205-06 (stating

that the complainant in an access to the courts claim "must describe the underlying

arguable claim well enough to show that it is 'more than mere hope', and it must describe

the 'lost remedy.'") (citation omitted). Consequently, Defendants' motion to dismiss this

First Amendment claim will be granted.

### 2. Interference with Mail

The Supreme Court has made clear that prisoners do not surrender all constitutional rights during their confinement, and the Supreme Court has instructed that "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver*, 118 F.3d 175; *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner.").

In order to state a claim of this sort under the First Amendment, a prisoner must allege that the interference with his legal mail was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice...of opening legal mail outside the presence of the addressee inmate...impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." *See, e.g.*, *Jones*, 461 F.3d at 359 (distinguishing between a "pattern and practice" and an "explicit

policy"). Prisoners need not allege or prove any "actual injury" beyond the direct injury to their First Amendment right to use the mails. *Taylor*, 196 F. App'x at 128.

Notably, courts have found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. *See, e.g.*, *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Hale v. Pa Dept. of Corr.*, No. 3:07-cv-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("opening [court mail] outside [prisoner's] presence on two occasions . . . does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation . . . Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation.").

Here, Alexander contends that Defendant Kifer interfered with his mail on three separate occasions. Alexander alleges that he submitted a packet of documents to unit corrections officers on June 25, 2019. (Doc. 17 ¶ 18). The corrections officers informed Alexander that the documents would be processed. (*Id.*). On July 10, 2019, Defendant Kifer allegedly told Alexander that "the addressed envelope was missing from the packet of documents he submitted on June 26, 2019 for processing." (*Id.* ¶ 19). Alexander maintains

that he submitted a second packet for processing on July 11, 2019, which was delivered to the SCI-Smithfield security office.  (*Id.* ¶¶ 20-22).

On July 15, 2019, Alexander states that he submitted another envelope, in an attempt to locate the documents from the prior mailing.  (*Id.* ¶ 23).  In response, on July 29, 2019, Defendant Kifer informed Alexander that the documents could not be located.  (*Id.* ¶ 24).  Alexander alleges that SCI-Smithfield security office received and retained the documents from his June 26, 2019 and July 15, 2019 mailings.  (*Id.* ¶ 25).

On October 2, 2019, Alexander asserts that he submitted a third packet of documents.  (*Id.* ¶ 28).  Corrections officers assured him that the packet would be processed.  (*Id.*).  On October 3, 2019, Defendant Kifer told Alexander that the Inmate Accounts Office received the documents and would mail them the following day.  (*Id.* ¶ 29).  Alexander contends that the documents were not mailed.  (*Id.* ¶ 30).

Alexander sets forth three, isolated incidents in which Defendant Kifer purportedly interfered with his legal mail.  These incidents that allegedly occurred on three occasions over a three-month period do not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation.  *See Hale*, 2010 WL 3791833, at *3.  Moreover, Defendant Kifer simply advised Alexander that he was missing an envelope, that documents could not be located, and that the Inmate Accounts Office would mail his documents.  The Court finds that these isolated incidents, without any implication of

improper motive, are simply insufficient to establish a constitutional violation. Defendants'

motion will be granted on this ground.

### 3. Phone Privileges

Alexander alleges that Defendants violated his constitutional rights by removing

family members from his approved telephone call list. (Doc. 17 ¶¶ 93-95, 133).

The Court of Appeals for the Third Circuit has described the implicated First

Amendment right as "the right to communicate with people outside prison walls." *Almahdi v.*

*Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (quotation omitted). Access to a

telephone "provides a means of exercising that right." *Id.* Nevertheless, that right is

"subject to rational limitations in the face of legitimate security interests of the penal

institution." *Perez v. Federal Bureau of Prisons*, 229 F. App'x 55, 57 (3d Cir. 2007) (quoting

*Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). In other words, "prisoners

'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone

privileges do not violate their First Amendment rights." *Almahdi*, 310 F. App'x at 522 (noting

that "regulations limiting telephone use by inmates have been routinely sustained as

reasonable."). Where there are alternative means of communicating with persons outside of

the prison, such as in person visits or mail, the restrictions on telephone use is more likely to

be considered reasonable. *See Almahdi*, 310 F. App'x at 522; *Ortiz-Medina v. Bradley*, No.

19-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020). Alexander provides no factual

allegations about whether he had alternate means of communicating with his son and

daughter, and his allegations do not support a plausible inference that any limitations on phone use was not rational.  As pled, the Court is unable to discern a plausible constitutional violation.  *See Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim).  Accordingly, Alexander's First Amendment claim based on telephone usage will be dismissed.

### 4. Retaliation

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the

two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005)

(nonprecedential).  Only when the facts of a particular case are "unusually suggestive" of a

retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See*

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted

that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive

temporal proximity between the protected activity and the allegedly retaliatory action or (2) a

pattern of antagonism coupled with timing that suggests a causal link."  *Watson v. Rozum*,

834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison

officials to show, by a preponderance of the evidence, that "they would have made the

same decision absent the protected conduct for reasons reasonably related to a legitimate

penological interest."  *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same

decision defense.'"  *Watson*, 834 F.3d at 422.  If the prison officials can make this showing,

it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Alexander alleges that Defendants retaliated against him for filing a lawsuit and

grievances.  The alleged retaliatory acts include interfering with his mail for a 2019 civil

case, searching his cell on June 24, 2020, placing him in the RHU on January 30, 2020,

exposing him to OC spray in the RHU in February 2020, denying him phone privileges on

July 24, 2020, recommending placement in the DEMO program in 2020, and filing

misconducts in 2020.

The filing of a lawsuit and grievances qualifies as constitutionally protected activity. *See Watson*, 834 F.3d at 422-23.  However, Alexander has failed to adequately allege that the filing of his prior lawsuit and grievances motivated the Defendants to take adverse action.

First, interference with mail and a cell search do not constitute adverse actions for a retaliation claim.  *See Huertas v. Sobina*, 476 F. App'x 981, 984 (2012) (holding that interfering with an inmate's mail "was not sufficiently adverse to deter a person of ordinary firmness from pursuing grievances"); *Banks v. Rozum*, 2015 WL 1186224, *7 (M.D. Pa. 2015) (holding that the search of a cell is not a sufficient adverse action), *aff'd*, 639 F. App'x 778, 781-82 (3d Cir. 2016).

Next, Alexander asserts that he was denied phone privileges in July 2020, placed in the RHU on January 30, 2020, exposed to OC spray in February 2020, referred for placement in the DEMO program in 2020, and had misconducts issued against him in 2020. Due to the passage of time—up to a year and a half—Alexander has not established an "unusually suggestive" temporal proximity between his protected conduct and the alleged adverse action.  *See Williams v. Phila. Housing Authority Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004).

Alexander's amended complaint, as pled, fails to set forth a retaliation claim.  The Court will grant Defendants' motion to dismiss the First Amendment retaliation claim.

**C. Eighth Amendment Claim Regarding Placement in the RHU and Cell Search**

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination…deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Alexander maintains that his stay in the RHU violated the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 17 ¶ 130). The Supreme Court has held that "[i]t is well settled that the decision where to house inmates is at the core of

22

prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Thus, a transfer of a prisoner to the RHU alone does not violate the Eighth Amendment. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (because the Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities," placement of prisoner in RHU for 112 days alone, without allegation that he was denied life's necessities, did not state a claim for relief); *Gibson v. Lynch*, 652 F.2d 348 (3d Cir. 1981) (incarceration in solitary confinement for 90 days did not violate the Eighth Amendment); *Griffin v. Vaughn*, 112 F.3d 703, 709 (placement in administrative custody for 15 months did not violate the Eighth Amendment).

Alexander maintains further that the cell search violated his Eighth Amendment rights. The Eighth Amendment protects prisoners from searches conducted only for "calculated harassment." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). A single cell search is generally insufficient to constitute an Eighth Amendment violation. *See Kokinda v. Pa. Dep't of Corrs.*, 2016 WL 7029385, at *7 (W.D. Pa. Oct. 31, 2016); *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989); *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (stating that "the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation").

In short, Alexander has failed to plead viable claims based on alleged violations of the Eighth Amendment. These claims will be dismissed.

### D. Defendants are entitled to Qualified Immunity on the Exposure to OC Spray Claim

As stated, prison officials may violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying deliberate indifference to a substantial risk of serious harm to an inmate.  Alexander alleges that Defendants used OC spray on other inmates in the RHU on three occasions.  (Doc. 17 ¶¶ 54-55).  He has not alleged that the OC spray was used in a greater quantity than necessary on these other inmates.  Nor has he alleged that the use of OC spray on other inmates housed in different cells posed a serious risk of harm to him, and that the Defendants were subjectively aware of such a risk.  As such, this Eighth Amendment claim fails. *See Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (single unplanned use of OC spray did not violate the Eighth Amendment).

However, even if Alexander had stated a colorable constitutional claim relating to his exposure to secondhand OC spray, Defendants, in their individual capacities, are entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim, Alexander must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.  It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244).  Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity.  *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).  A right is clearly established if "every

reasonable official would have understood that what he is doing violates that right."

*Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  To be clearly established, there does not have to

be a case that is directly on point, "but existing precedent must have placed the statutory or

constitutional question beyond debate."  *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741

(2011)).  In determining whether a right is clearly established, courts must not define the

right "at a high level of generality."  *Id.* (quoting *Al-Kidd*, 563 U.S. at 742).  Rather, the

analysis should focus on "whether the violative nature of particular conduct is clearly

established."  *Id.* (quoting *Al-Kidd*, 563 U.S. at 742).  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*,

533 U.S. at 202.  It is the plaintiff who bears the initial burden of demonstrating that the

constitutional right at issue was clearly established at the time of the claimed violation.  *See*

*Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of

constitutional or statutory rights may overcome the defendant official's qualified immunity

only by showing that those rights were clearly established at the time of the conduct at

issue.").

To determine whether a right is clearly established, the court may look to cases from

the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of

persuasive authority" from other circuit courts.  *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431,

449 (3d Cir. 2020) (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d

136, 142 (3d Cir. 2017)).

Here, the Court cannot conclude that it was clearly established that inadvertent

exposure to OC spray used against another inmate would violate an individual's Eighth

Amendment rights.  Indeed, several courts in this district have granted qualified immunity in

this setting.  *See e.g., Rivera v. Redfern*, 2023 WL 2139827, at *9 (M.D. Pa. Feb. 21, 2023)

(collecting cases and granting qualified immunity because "it is not clearly established that

secondhand exposure to OC spray in response to another inmate's actions across the

block, would violate an individual's rights") (internal quotations and citations omitted);

*Stroman v. Wetzel*, 2020 WL 1531325, at *6 (M.D. Pa. Mar. 31, 2020) ("Defendants simply

could not have recognized that their use of OC spray in response to another inmate's

actions across the block would violate a 'clearly established statutory or constitutional right[ ]

of which a reasonable person would have known'") (citations omitted).

Given that Alexander has failed to allege that Defendants violated a clearly

established right in this setting, Defendants are entitled to qualified immunity on this Eighth

Amendment claim.

### E.  Fourth Amendment Cell Search Claim

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon probable cause, supported

by Oath or affirmation, and particularly describing the place to be
searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  The prohibitions contained within the Fourth Amendment are

applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment.

*Cady v. Dombrowski*, 413 U.S. 433, 440 (1973).

To the extent that Alexander alleges that the search and seizure of his property

violates the Fourth Amendment, courts have repeatedly held that the Fourth Amendment is

not applicable to the contents of a prisoner's cell.  *See Hudson v. Palmer*, 468 U.S. 517,

530 (1984) ("prisoners have no legitimate expectation of privacy and . . . the Fourth

Amendment's prohibition on unreasonable searches does not apply in prison cells"); *Doe v.

Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do

not have a Fourth Amendment right to privacy in their cells.") (citing *Hudson*, 568 U.S. at

529)).  Defendants' motion to dismiss the Fourth Amendment claim will be granted.

### F.  Fourteenth Amendment Due Process Claims

#### 1.  *Procedural Due Process*

The Fourteenth Amendment of the United States Constitution provides in pertinent

part that: "No State shall…deprive any person of life, liberty, or property, without due

process of law."  U.S. CONST. amend. XIV.  The United States Supreme Court has

mandated a two-part analysis of Fourteenth Amendment procedural due process claims.

*See Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  First, the reviewing court must

determine "whether the asserted individual interests are encompassed within

the...protection of 'life, liberty or property.'" *Id.* If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" *Id.* If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

### a.  Cell Search and Confiscation *of Property*

Ordinarily, the concept of "due process" requires some type of hearing before the state can deprive a person of a protected interest. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. The Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. *Parratt v.*

*Taylor*, 451 U.S. 527 (1981).  The Supreme Court subsequently extended the rule in *Parratt* to apply to intentional acts by state actors.  *Hudson v. Palmer*, 468 U.S. 517 (1984); *see also Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir. 2009) (nonprecedential).

        The Third Circuit Court of Appeals has held that the state's grievance procedure provides an adequate post-deprivation remedy, *see*, *e.g.*, *Tillman v. Lebanon County Corr. Fac.,* 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim, *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995), even if an inmate is dissatisfied with the result of the process.  *Iseley v. Horn*, 1996 WL 510090, at * 6 (E.D. Pa. 1996).  "Because prisons are constitutionally required to afford inmates only a post-deprivation remedy,…the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights."  *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008).

        Alexander alleges that Defendants deprived him of his personal property following the cell search.  (Doc. 17 ¶¶ 68-76).  The DOC has a grievance process that provides for sufficient post-deprivation remedies—even if Alexander is dissatisfied with the result of that process.  It is clear that Alexander had notice of the grievance policy and utilized that grievance procedure.  The Court will grant the Defendants' motion to dismiss with respect to this procedural due process claim.

### b. Inmate Misconduct[3]

The filing of a false disciplinary misconduct alone does not violate a prisoner's constitutional rights, even if it may result in the deprivation of a protected liberty interest. *See Hutchinson v. Kosakowski*, 2015 WL 3737656, at *4 (M.D. Pa. 2015) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, inmates must be provided due process of law prior to being deprived of a protected liberty interest. *Id.* Accordingly, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Id.* (citing *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002); *Freeman*, 808 F.2d at 953).

The fact that Alexander was found guilty at a misconduct hearing is not in itself a due process violation. Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). In *Wolff*, the Supreme Court held that an inmate must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454

---

[3]   Alexander has expressly disclaimed Defendants' characterization of his disciplinary hearing claim as a procedural due process claim. (Doc. 27, p. 15 n. 19). Nevertheless, the Court will assess whether the facts alleged in the amended complaint support a procedural due process claim.

(1985).  Because Alexander does not allege that he suffered a loss of good conduct time,

the *Wolff* protections are inapplicable.  (*See* Doc. 17 ¶ 106).

Moreover, the Due Process Clause does not provide protection against the

imposition of discipline, including disciplinary confinement and the loss of various privileges

inasmuch as these other forms of discipline do not "impose[ ] atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  *Torres v. Fauver*,

292 F.3d 141, 150-51 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).

Confinement in administrative or punitive segregation is insufficient, without more, to

establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty

interest.  *Sandin*, 515 U.S. at 486; *see Griffin v. Vaughn*, 112 F.3d 703, 706-07 (3d Cir.

1997).  Alexander alleges that Defendant Ellenberger denied him witness testimony, the

opportunity to present evidence, and that he was biased during the misconduct hearing.

Alexander does not allege that he was subjected to an atypical and significant hardship.

Moreover, placement in disciplinary confinement does not impose an atypical and significant

hardship on an inmate in relation to the ordinary incidents of prison life.

### c.  Recommendation for DEMO Program

Alexander also alleges that Defendants violated his procedural due process rights by

recommending his placement within the DEMO program.  (Doc. 17 ¶¶ 108-110).  It is well-

established that an inmate does not have a constitutional right to any particular custody or

security classification.  *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*,

427 U.S. 236, 242.  Because prisoners have no inherent constitutional right to a particular

custody or security classification, Defendants' motion to dismiss this due process claim will

be granted.

### 2.  *Substantive Due Process*

Alexander's substantive due process claim is barred by the "more specific provision

rule."  In adopting the "more-specific-provision-rule" established in *County of Sacramento v.*

*Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a

constitutional claim is covered by a specific constitutional provision…, the claim must be

analyzed under the standard appropriate to that specific provision, not under the rubric of

substantive due process.'  *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219,

137 L.Ed.2d 432 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386, 109

S.Ct. 1865, 104 L.Ed.2d 443 (1989))."  *Betts*, 621 F.3d at 260-61.  Alexander's substantive

due process claims fit squarely within his constitutional claims—i.e., his cell search claim is

duplicative of his Fourth and Eighth Amendment claims.  Thus, the more-specific-provision

rule forecloses any substantive due process claim.

### G.  Violation State Law and of DOC Policy

Alexander asserts that Defendants violated Title 37 of the Pennsylvania Code and

an internal DOC policy.  (Doc. 17 ¶ 136).  These allegations do not rise to the level of a

constitutional violation.

Violations of state law, assuming any such violations occurred here, do not on their own amount to a constitutional violation. *See Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011) ("[A] state official's failure to follow state law does not, by itself, shock the conscience [in violation of the constitution] in the absence of additional facts."); *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (explaining that "'[a] violation of state law is not a denial of due process of law.'" (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988))). Additionally, "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension"). Accordingly, Alexander has not alleged a plausible constitutional violation based on a violation of Title 37 and a violation of DOC policy. These claims will be dismissed.

### H.  Lack of Standing to bring Defamation Claim

Alexander appears to assert a defamation claim on behalf of his daughter.  (Doc. 17 ¶¶ 106, 136).  It is well-settled law that "prudential standing requires, *inter alia,* that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties."  *Hill ex rel. Hill v. Pennsylvania Dept. Of Corrections,* 2013 WL 1320413 *1 (3d Cir. 2013).  To the extent that Alexander seeks to raise a defamation claim on behalf of his daughter, he lacks standing to do so.  This claim will be dismissed.

### I.   Defendants are entitled to Sovereign Immunity on the Defamation Claim

Defendants also seek dismissal of Alexander's defamation claim, arguing that the doctrine of sovereign immunity bars this claim against state employees.  (Doc. 25, pp. 35-36).  Defendants are entitled to sovereign immunity with respect to Alexander's state law claim as it is beyond dispute that "[t]he Department of Corrections is an agency of the Commonwealth and the Defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity." *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing *Maute v. Frank*, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); *Robles v. Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), *aff'd*, 35 F. App'x 357 (3d Cir. 2002).  As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like the one alleged here, since Commonwealth employees are immune from liability for

35

either negligence or intentional torts.[4]  *McGrath*, 67 F.Supp.2d at 511, *aff'd*, 35 F. App'x 357

(3d Cir. 2002).  The Court will dismiss this claim.

### J.  Claims for Declaratory and Injunctive Relief

The case or controversy requirement of Article III, § 2 of the United States

Constitution subsists through all stages of federal judicial proceedings.  Parties must

continue to have a "personal stake in the outcome of the lawsuit."  *Lewis v. Continental*

*Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

The mootness doctrine recognizes that "[i]f developments occur during the course of

adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a

court from being able to grant the requested relief, the case must be dismissed as moot."

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996).  An inmate's

transfer from the facility complained of generally moots the equitable and declaratory

claims.  *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401

F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief

claim moot).

---

[4]    The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b).

Alexander is no longer housed at SCI-Smithfield.  In light of Alexander's transfer from SCI-Smithfield, the institution wherein the allegations related to his claims stem, his requests for injunctive and declaratory relief are now moot.

### K.  The PLRA bars any request for Compensatory Damages

Section 1997e(e) of Title 42 provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  More than a *de minimis* physical injury must be alleged as a predicate to allegations of mental or emotional injury.  *See Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).  In the amended complaint, Alexander seeks compensatory damages.  (Doc. 17, p. 31).  However, Alexander does not allege that he suffered *any* physical injury, let alone a *de minimis* physical injury, as required for a predicate to emotional injury.  *See Mitchell*, 318 F.3d at 534-36.  He is not entitled to compensatory damages.

### L.  Official Capacity Claims

Lastly, Defendants assert that the claims against them in their official capacities fail because they are not "persons" under section 1983.  (Doc. 25, p. 40).  Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law.  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).  Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent.  *Id.*; *see also Monell v. Dep't of Social Servs.*, 436

U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official

capacities, those lawsuits are treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21,

25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh

Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by

citizens.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984);

*Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190,

195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official

capacity and the state is the real party upon which liability is sought.  *Scheuer v. Rhodes*,

416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding

Alexander's claims, nor has Pennsylvania waived this grant of immunity.  *See* 42 PA. C.S.A.

§ 8521(b).  Thus, Alexander's section 1983 claim against the Defendants in their official

capacities is barred by sovereign immunity.  *See Betts v. New Castle Youth Dev. Ctr.*, 621

F.3d 249, 254 (3d Cir. 2010).  Defendants are entitled to dismissal on this ground.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview

State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Since Alexander's claims are factually and legally flawed and he has previously been granted leave to amend, allowing further leave to amend would be both futile and inequitable.  *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story...giving him further leave to amend would be futile.").

## V.     **Conclusion**

The Court will deny Defendants' motion to dismiss this action as untimely under Pennsylvania law's two-year statute of limitations and will grant the motion in all other respects.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January ___, 2024